294 So.2d 338 (1974)
STATE of Florida, Appellant,
v.
Geoffrey KNAPP, Appellee.
STATE of Florida, Appellant,
v.
Anthony J. BOGART, Appellee.
Nos. 73-841 to 73-844.
District Court of Appeal of Florida, Second District.
May 1, 1974.
Rehearing Denied June 7, 1974.
*339 Robert L. Shevin, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellant.
Philip J. Padovano of Ruiz & Padovano, St. Petersburg, for appellees.
GRIMES, Judge.
This is an interlocutory appeal from an order granting the defendants' motion to suppress evidence. The factual narration which follows is taken from the transcript of testimony given at the hearing on the motion to suppress.
In the spring of 1973, Officer Parks of the St. Petersburg Police Department received information from various sources which led him to believe that a large scale transfer of marijuana in the Tampa-St. Petersburg area was imminent. A confidential informant, a Winnebago dealer who had provided reliable information in the *340 past, informed him that one Dale Morehouse and another man had been to his place of business to rent a Winnebago motor home and had expressed concern over the weight the vehicle could safely carry. The informant had found scraps of marijuana in a Winnebago he had previously rented to Morehouse. Through street rumors, Parks heard that the price of marijuana was soon going to drop in the area because a large shipment was coming in on the weekend of May 5. A member of the State Attorney's Task Force on drugs from Gainesville advised Parks that a large shipment of marijuana was expected to come up Interstate 75 to Gainesville in two Winnebago campers. Because of this information, Officer Parks decided to conduct surveillance on the Winnebago rented from the confidential informant by Dale Morehouse. Morehouse was listed in the Intelligence Bureau files as being involved in narcotics.
Surveillance of the Winnebago was continuous from Wednesday, May 2, to Friday, May 4. Throughout this period, the rented vehicle did not move from where it was parked at a residence in Tampa. On Friday night the investigators observed the arrival of a U-Haul truck at the residence, whereupon large packages were unloaded and transferred into the Winnebago. The driver then re-entered the U-Haul truck and left the residence. Officer Parks was informed of these events by car radio. He intercepted the U-Haul and followed it to a parking lot behind some business establishments in Pinellas Park. He stationed himself approximately one hundred yards away and began to watch the truck through binoculars.
A few minutes later the defendant, Knapp, drove up in a Dodge van and parked at a ninety degree angle so that the back door of the van was about six feet from the rear of the U-Haul truck. The defendant, Bogart, opened the back of the U-Haul and started removing large bundles which were dark brown in color. At this point, Parks radioed to his associates that a transfer of crocus sacks was being made and directed that they should move in to make arrests.
Pursuant to the instructions of his superior, Officer Holloway approached the defendants with his gun drawn. As he neared the vehicles he smelled the distinct odor of marijuana. He announced his presence and stated that the defendants were under arrest. He then observed what appeared to him to be leafy particles of marijuana lying in the back of the open U-Haul truck. At this point Officer Parks arrived and also smelled and saw the marijuana.
The automobile was impounded and a search warrant was obtained. The vehicles were searched and large quantities of marijuana were found.
The trial judge held that the officers did not have probable cause to make the arrests. He quashed the evidence of what the officers observed at the time of making the arrests as being the fruit of an unlawful arrest. He held that the affidavit for the search warrant was defective and invalidated the search.
There was considerable dispute over whether Officer Parks was able to see whether the packages being transferred consisted of burlap or crocus bags. The significance of this is that it was established that marijuana is frequently transported in such containers. The court doubted Parks' ability to identify the packages as being crocus bags because of the distance involved and the lighting conditions at the time in question. Construing the testimony most favorable to the defendants (as we must because the trier of fact held in their favor), we can only conclude Officer Parks may have thought he saw crocus bags since this is what he reported on the radio to his fellow officers. There was also a dispute over whether Officer Holloway saw the marijuana before making the arrest. Once again, giving the defendants the benefit of doubt cast upon Holloway's testimony on this point by way *341 of impeachment, we must consider the case upon the basis that the arrest was made before the marijuana was observed.
Probable cause for making an arrest has been defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. Trivette v. State, Fla.App.3rd, 1971, 244 So.2d 173. The officer need not actually see the law being violated nor must he satisfy himself beyond any question that a felony has been committed. Russell v. State, Fla.App.3rd, 1972, 266 So.2d 92. The person making the arrest may act either upon facts within his own knowledge or on those communicated to him by a responsible person. Bryant v. State, Fla.App.2d, 1963, 155 So.2d 396.
In determining whether the police have probable cause to believe that a felony was being committed so as to justify an arrest without a warrant, the sufficiency of the knowledge of the officers must be determined, not by an analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasonable man, knowing all the facts which the officers knew from their investigation, would have believed under these circumstances. State v. Outten, Fla. 1968, 206 So.2d 392.
Applying these criteria to the facts of the instant case, we are convinced that Officer Parks had probable cause to make an arrest at the time he gave the order. Cf. Carroll v. United States, 1924, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. When the undisputed fact of Officer Holloway's detection of the odor of marijuana prior to the arrest is added to the scales, this conclusion is all the more compelling. See Pegueno v. State, Fla. 1956, 85 So.2d 600.
The defendants' reliance upon Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, is misplaced. In that case, the court held that federal agents did not have probable cause to stop an automobile based upon some indefinite information about stolen whiskey and the observing of the transfers of cartons from a residence to the automobile. Unlike the instant case, the contraband could not be smelled and the background information upon which the officers relied was much less definite.
After describing the vehicles sought to be searched, Officer Parks' affidavit for the search warrant gave as his reasons in support of probable cause:
"Affiant's reasons for this belief are that in his capacity as an Investigator of the Special Prosecution Division, State Attorney's Office of the Sixth Judicial Circuit of the State of Florida, he has occasion to investigate one DALE B. MOREHOUSE and that in the course of his investigation, he observed the above described U-Haul truck bearing New Jersey license tag number X-80067, depart from the residence of DALE B. MOREHOUSE, 9608 Taliaferro, Tampa, Hillsborough County, Florida, and followed said U-Haul truck, keeping it under continuance [sic] observation to a parking lot at the rear of the Professional Arts Building located in the 4900 block of Park Boulevard, Pinellas Park, Pinellas County, Florida, and that he observed two white males removing large burlap sacks from the said U-Haul truck and transfer the said burlap sacks to a Dodge Sportsman Van. That based upon his prior experience as a police officer, specifically involved in the investigation of narcotics offenses, he recognized these burlap sacks as being commonly used means for the transportation of marijuana. In further, that upon approaching the individuals engaged in transferring the said burlap sacks from the said U-Haul truck to the previously described Dodge Sportsman Van, the Affiant did observe particles of a leafy substance on and about the rear bumper area of the previously described U-Haul truck which his previously mentioned experience *342 led him to believe was marijuana."
In quashing the search warrant, the trial court made the following observation:
"The affidavit and search warrant in my opinion fails to meet the requirement to set forth a sufficient basis for probable cause, in that the experience of the officer is not delineated. The reason for the investigation or the surveillance of Dale Morehouse is not set forth with sufficient particularity. The proof that adduced at this hearing clearly indicates that the officer could not have observed burlap sacks passed, as he swore to in the affidavit for the search warrant and the particles and leafy substance came about as a result of an illegal arrest, and, therefore, tainted by that illegal arrest, and could not be utilized as a basis for the issuance of a search warrant."
In noting that the officer could not have observed burlap sacks passed, the court referred to information beyond the four corners of the affidavit. Generally, the sufficiency of a search warrant is to be determined solely with reference to the warrant and supporting affidavit. State v. Oldack, Fla.App.2d, 1973, 283 So.2d 73; United States v. Evans, Tenn.D.C., 1951, 97 F. Supp. 95. Yet, where it is shown that certain of the facts set forth in the affidavit are incorrect, the sufficiency of the affidavit should be tested as if the true facts had been stated. United States v. Morris, C.A. 5th 1973, 477 F.2d 657; United States v. Jones, C.A. 5th 1973, 475 F.2d 723; United States v. Upshaw, C.A. 5th 1971, 448 F.2d 1218. This means that the reference to having seen the transfer of burlap sacks would have to be interpreted as if the officer saw only the transfer of large bundles which were dark brown in color. Even so, the circumstances of the transfer and the general description of what was being handled were highly suspicious.
The court's conclusion that the observance of the leafy substance came about as a result of an illegal arrest is no longer pertinent because we have held that the arrest was not illegal. In any event, such observance did not come about because of the arrest but because the officers were at a place that they were entitled to be and saw what they were entitled to see. See State v. Ashby, Fla. 1971, 245 So.2d 225.
The remaining objections to the affidavit are best disposed of by a quotation from the United States Supreme Court in United States v. Ventresca, 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, where the court said:
"... [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."
In Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, the United States Supreme Court held that it did not violate the petitioner's Fourth Amendment rights when after arrest the petitioner's automobile was searched at the police station without obtaining a search warrant. Here, the officers took the extra step and obtained a warrant. As stated in Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fail.
We believe that the affidavit for the search warrant, even when read in the *343 context of how the trial court interpreted the facts stated therein, was legally sufficient. Hence, the search warrant was validly issued.
The order of suppression is reversed.
HOBSON, Acting C.J., and BOARDMAN, J., concur.