The indictment in this cause (omitting formal parts) is as follows: *Page 92 
 "The grand jury of said county charge that, before the finding of this indictment, RODERICK ANDRE JETER, alias RODERICK ANDREW JETER, whose name is to the grand jury otherwise unknown, did draw a check or cause or direct the drawing of a check with the intent to defraud on the Alabama Exchange Bank of Tuskegee, Alabama, which check was dated February 28, 1974, and payable to Warren H. Brown in the amount of Six Thousand Dollars, the said RODERICK ANDRE JETER, alias RODERICK ANDREW JETER, whose name is to the grand jury otherwise unknown, knowing at the time of the drawing of such check that he did not have a checking account with the Alabama Exchange Bank of Tuskegee, Alabama, contrary to law and against the peace and dignity of the State of Alabama.
Earl C. Morgan (Signed)"
The appellant filed a motion to quash this indictment, which was duly overruled prior to trial. The appellant did not file a demurrer to this indictment.
The jury found the appellant guilty as charged and fixed punishment at a fine of "Four Thousand Dollars."
The trial court then entered judgment in accordance with this verdict, and, in addition, sentenced the appellant to three years imprisonment. The appellant's motion for a new trial was duly overruled following hearing.
Warren H. Brown, Jr. testified that he lived at 1816 Twenty-seventh Avenue, Southwest, in Jefferson County, Alabama. He stated his age at twenty-three, and said that he was a part owner of a dry cleaning business. He testified that he had two prior convictions for forgery. He testified that he had known the appellant, Roderick Jeter, for about two years, having met him while they were in college. He stated that in February, 1974, he saw the appellant on several occasions. He testified that he received a check in the amount of $6000.00, payable to Warren H. Brown, dated February 28, 1974, and drawn on the Alabama Exchange Bank at Tuskegee, Alabama. He testified that this check was signed by Roderick Jeter, the appellant.
Mr. Brown further testified that he maintained his personal account at the Central Bank of Birmingham, located at Fourth and Twentieth Street. He testified that he took the check, which he received from Mr. Jeter, and deposited it to his account at Central Bank. He identified a deposit slip made out for this purpose. He also identified at trial the check which he received from the appellant, Mr. Jeter. He testified that the following day, after depositing Mr. Jeter's check, he wrote out a check for $6000.00, drawn on his own account at Central Bank and delivered all of the proceeds, $6000.00, to the appellant.
On cross-examination, Mr. Brown testified that he had plead guilty in March, 1975, to a forgery case and had received a sentence of a year and one day for forgery of some checks drawn on the Birmingham Trust National Bank. He testified that his probation application was presently pending.
Mr. Brown further testified that he went by the home of Mr. Jeter in Birmingham in February, 1974, and picked up the check in question from the mailbox of the appellant when he was on his way to work. He testified that the appellant had told him the check would be there. He then deposited it later that same day to his own account at Central Bank.
Following cross-examination and redirect-examination, Mr. Brown testified that rather than paying Mr. Jeter by cash, he had given Mr. Jeter a cashier's check for the $6000.00, which he had obtained at Central Bank.
Mr. Willie Smith, Assistant Operations Officer at Central Bank of Birmingham, testified that he was in charge of the bookkeeping department and deposit services. He testified that he reported directly to Mr. Hank Formby, Vice President of Operations. He testified that, as a part of his duties, he had examined the account of Warren H. Brown, Jr. in February and March, 1974, at Central Bank. He identified *Page 93 
a statement of the bank on Mr. Brown's account, and also a ledger card kept by Central Bank on this account.
Mr. Willie Smith was then permitted to testify over objection that he had examined the account ledger card, which showed that there had been a "charge-back" for an item deposited but returned to Central Bank as unpaid. Mr. Smith then explained how the bank handled dishonored items which were returned to it through a clearing house. He stated that his record showed that a check for $6000.00, drawn on the Alabama Exchange Bank of Tuskegee, Alabama, payable to Warren H. Brown, had been returned as dishonored by the bank at Tuskegee.
Mr. Smith also identified a photograph which had been made of Mr. Brown at Central Bank by a security officer. Mr. Smith also identified a cashier's check, drawn on the Central Bank of Birmingham's main office, for $6000.00, on the account of Warren Brown, and that the payee of the cashier's check was the appellant, Roderick Jeter.
Warren H. Brown, Jr., was then recalled to the witness stand and identified a check, marked State's Exhibit 6, which he testified the appellant, Roderick Jeter, gave to him on February 25, 1974, by picking it up at the appellant's home from his mailbox, and which was deposited by him to his own account at Central Bank. He also identified a cashier's check, which he drew on his account at Central Bank, and made payable to Roderick Jeter. He stated that this was delivered by him to the appellant.
Mr. Brown admitted, on cross-examination, that he did not see the appellant personally when he picked up the check in question from the appellant's mailbox. Brown further testified that he carried the cashier's check to Mr. Jeter, and delivered it to him in the presence of Mr. Jeter's wife at his apartment.
Mr. J.T. Daniel, Jr. testified that he was Vice President of the Alabama Exchange Bank in Tuskegee, Alabama. He stated that he was responsible for the operation of the bookkeeping department, and as such had supervision over various checking accounts. He stated that this bank kept signature cards, and as a part of his duties, he would examine various checks and compare them with the signature cards. He then identified a signature card, dated October 8, 1973, which bore the signature of the appellant, Roderick Jeter, and had Mr. Jeter's Social Security No. 423 74 4330 on it. He testified this signature card was kept in the bookkeeping department and was used by them to compare signatures when checks came in to various accounts.
Mr. Daniel then identified a statement, dated October 27, 1973, on the account of Roderick Jeter, the appellant. He testified that a copy of this statement had been mailed to the appellant at the address given the bank by Mr. Jeter. He stated that a copy of the statement was mailed to the customer holding the account on the next day, following the close of business.
Mr. Daniel also identified a statement, dated November 24, 1973, on the account of Mr. Roderick Jeter, and a further statement, dated December 22, 1973, also on the account of Mr. Roderick Jeter, the appellant. He stated that the December statement showed an overdraft on Mr. Jeter's account of $2.66. He further testified that, on December 31, 1973, the Alabama Exchange Bank closed Mr. Jeter's account by the bank's deposit of $2.66 to cover the overdraft, and that a statement, dated January 7, 1974, was mailed by the Alabama Exchange Bank to the appellant, Mr. Jeter, showing that the account was closed. Mr. Daniel then identified the handwriting of Mrs. Vivian Segers, who was an employee under Mr. Daniel's supervision, and who had written on the check, dated February 27, 1974, for $6000.00, that the account was closed. The check was signed by Roderick A. Jeter and returned to Central Bank with a notation "Account Closed."
Mr. Daniel also testified that in comparing the signature on the signature card with that of the check, which was dated February 27, 1974, and which was dishonored, that the signatures of Roderick Andre Jeter appeared to be the same. He also *Page 94 
stated that the appellant had maintained an account with his bank while he was a student at Tuskegee Institute, but had not had one there since mailing the notice to him on January 7, 1974, that his account was closed.
The appellant presented no testimony in his behalf at trial.
 I
The appellant first asserts that the indictment in question is faulty in that it fails to establish the corporate status of the Alabama Exchange Bank of Tuskegee, and calls attention to his motion to quash.
As pointed out by Judge Harris, speaking for this Court inFlippo v. State, 49 Ala. App. 138, 269 So.2d 155, the proper way to attack an indictment is as follows:
 ". . . This defect does not render the indictment void. The constitutional requirement that the accused be made aware of the nature and cause of the charge against him was met. The proper way, however, to reach defects in an indictment is by demurrer and not by motion to quash. Duncan v. State, 278 Ala. 145, 176 So.2d 840; Boulo v. State, 49 Ala. 22; Daniel v. State, 149 Ala. 44, 43 So. 22."
As previously noted, there was no demurrer filed in this cause by the appellant. Since we do not consider the question of whether or not the Alabama Exchange Bank was a corporation to be an essential element of the charge in the indictment, this issue is not properly before us for review.
Judge DeCarlo states the rule here applicable in Fitzgeraldv. State, 53 Ala. App. 663, 303 So.2d 162, in this way:
 "A defect not associated with an essential element of the offense would not by its presence be fatal to a complaint, and is noticed by this court only when taken advantage of by demurrer in the lower court. Hornsby v. State, 94 Ala. 55, 10 So. 522."
Since there was no demurrer filed in this cause, nor was the alleged corporate status of the Alabama Exchange Bank in any way raised in the trial court, such matter is not properly before this court for review. Cases herein cited.
 II
Appellant next asserts that Mr. J.T. Daniel, Jr., Vice President of the Alabama Exchange Bank, was not properly qualified as a handwriting expert, and therefore should not have been permitted to testify as to the authenticity of the records pertaining to Mr. Jeter's account at Alabama Exchange Bank.
Mr. Daniel testified that he was responsible for the day-to-day operations of the bookkeeping department of the bank in question. He further testified that for the past six years he had examined many items presented for payment and had compared them with signature cards kept at the bank.
We are of the opinion that the trial court properly permitted Mr. Daniel to identify and compare the records of Mr. Jeter's account. Bridgeforth v. Sharpe, 220 Ala. 188, 124 So. 416;Glover v. Gentry, 104 Ala. 222, 16 So. 38.
 III
Appellant asserts that he may not be convicted on the uncorroborated testimony of an accomplice, Mr. Warren H. Brown, Jr., and cites us to Title 15, Section 307, Code of Alabama 1940.
We have carefully examined this record, including the testimony of Mr. Willie Smith pertaining to the records at Central Bank, the check, and account statements of the Alabama Exchange Bank, together with the testimony of Mr. J.T. Daniel, Jr. It is clear that the State of Alabama here presented a prima facie case, and that Mr. Brown's testimony was amply corroborated by these witnesses' testimony. Tolbert v. State,294 Ala. 738, 321 So.2d 227; Sorrell v. State, 249 Ala. 292,31 So.2d 82.
 IV
We also point out that our Supreme Court in Tolbert v. State,294 Ala. 738, *Page 95 321 So.2d 227, has held the Act under which this prosecution was instituted to be constitutional.
Justice Shores, speaking for the Court in Tolbert, stated:
 ". . . The offense involved is theoretically complete when the check is drawn, with intent to defraud, the drawer knowing that there are insufficient funds to cover the same, or that the drawer has no account with the drawee, or that no such drawee exists. . . ."
The effect of Tolbert, supra, after, as here, the State has presented a prima facie case, is to "shift to the drawer of the check the responsibility of explaining the transaction" when the State has established a dishonored check and notice to the drawer that the account was no longer in existence.
 V
Appellant next asserts that the trial court erred in overruling his objection to the district attorney's argument wherein he referred to the appellant as a "film flam artist."
We are of the opinion that this was a legitimate inference to be drawn from the evidence in this case, and therefore no error is shown. Cross v. State, 68 Ala. 476; Barnett v. State,52 Ala. App. 260, 291 So.2d 353, and authorities cited therein.
 VI
Finally, appellant calls our attention to his exception to the oral charge of the court, which was as follows [R.P. 143]:
 "In the trial of this case, as in all cases, if you can reasonably reconcile the testimony of the witnesses so as to make them all speak the truth you should do so; or if you can't do that, then it is up to you to determine what testimony you find worthy of belief and what testimony you find to be untrue and, of course, consider only that testimony which you find to be true and disregard that which you find to be untrue."
Appellant asserts that the above is invasive of the province of the jury inasmuch as the entire case was based upon the testimony of witnesses for the prosecution, and as such was also contrary to the appellant's presumption of innocence.
We do not agree with this reading of the oral charge, as after considering the trial court's entire charge, we believe the law to have been correctly stated, and we do not believe that the portion quoted above unduly emphasizes any one aspect of the evidence, nor does it take away from the appellant's presumption of innocence. The appellant's assertion takes the charge out of context. Wright v. State, 269 Ala. 131,111 So.2d 596.
We have carefully examined this record and find same to be free of error. The judgment of the trial court is due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.
CATES, P.J., not sitting.