The appellant was indicted and convicted for grand larceny and sentenced to five years' imprisonment. The only issue presented on appeal is whether the trial court erred in overruling the defendant's motion to suppress evidence found in the trunk of his automobile pursuant to an alleged illegal search and seizure.
Around 7:30 on the morning of January 12, 1978, Claude Green went to the Monroeville National Guard Armory on business. He saw a pickup truck, which he recognized. The Armory was located on "the main thoroughfare here in town" and the truck was parked in the parking lot "out close to the road". Green could clearly see rifles "hanging in the back of " the truck. A Dodge Charger automobile was parked next to the truck. Green testified that he knew most of the people in "the National Guard out there" and knew most of their automobiles, but that he had never seen the Dodge "around there before". Green further testified, "I could not tell if there was anybody in the car or not because it had tinted glass and it was a hazy, cloudy day". He later stated, "I could see the — you know just the outline of somebody in the car". When asked, "Did you see any activity about getting out or anything?", Green replied, "No, sir".
 ". . . The car just sitting there and so I just looked at it and I said, well, something don't look right, to myself and I just drove back around and got the tag number and then went up to the station and I turned it in to the Chief of Police."
On cross examination, in response to being asked what looked so unusual about seeing two vehicles parked side by side in the parking lot, Green stated:
 "Well, just because at that time there had been a lot of break-ins in this area and things of that nature and it just didn't look right — that pickup truck sitting there with the guns in it and the car pulled right up close to it — it was just the way it was sitting."
Green also stated, "I was reporting something that looked suspicious to me . .". Green was at the Armory "roughly two minutes".
Monroeville Police Sergeant Bill Daily received a radio dispatch about 9:00 A.M. that "'71 blue and white Dodge with Alabama tag number EJX565 was noseying around a truck that was parked at the National Guard Armory", that the truck had rifles in it and that "the subject was looking in the truck". Daily went near the Armory and established surveillance although the Dodge was gone when he arrived. He called for an unmarked car.
Officer A.T. McQueen arrived and observed the Dodge pass the Armory twice while he was on the "stakeout": "when it went to town and when it came back from town". The Dodge was not seen at the truck by anyone after Green left the Armory. *Page 964 
Both Officers Daily and McQueen subsequently left the scene on another call after having observed the truck for approximately one hour to one hour and one-half. When they returned within thirty to forty-five minutes the rifles were gone.
Information concerning the Dodge was dispatched and a registration check revealed that the defendant was the registered owner. Deputy Sheriffs stopped the defendant who admitted ownership of the automobile but refused to allow the deputies to look in the trunk. The defendant was "detain(ed) for investigation" and taken to the police station. His automobile was also taken to the station. There a search warrant was obtained and a search of the trunk revealed the stolen guns. The defendant was then formally placed under arrest.
At trial the State stipulated that the affidavit for the search warrant was insufficient to show probable cause for its issuance. Neither the affidavit nor the search warrant was offered into evidence, and the affidavit and warrant are not a part of this record.
The question this court must determine is whether probable cause existed for the warrantless search of the defendant's automobile. Although the trial court found sufficient probable cause, we cannot agree.
In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022,29 L.Ed.2d 564 (1971), the Supreme Court of the United States instructed that:
 "(S)earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions . . . (T)he burden is on those seeking the exemption to show the need for it . . ."
Our own Supreme Court has embraced this principle, Paschal v.State, 365 So.2d 681 (Ala. 1978); Kinard v. State,335 So.2d 924 (Ala. 1976).
Based on the radio dispatch Sergeant Daily received (that a '71 Dodge with Alabama tag number EJX565 was noseying around a truck parked at the National Guard Armory and that a subjectwas looking in the truck at the rifles) the police officers may reasonably have believed they had probable cause to conduct the warrantless search of the appellant's automobile when the rifles were discovered missing. Such a report tends to suggest criminal activity.
However, the requirement of probable cause which is necessary in any search, warrantless or not, cannot be satisfied on the basis of a radio dispatch alone. Paschal, 365 So.2d at 682;Owens v. State, 51 Ala. App. 50, 282 So.2d 402, cert. denied,291 Ala. 794, 282 So.2d 417 (1973). While the arresting officers may rely on radio broadcasts "the subsequent determination by any court as to probable cause must necessarily turn on all the circumstances giving rise to the police dispatch". Owens, 51 Ala. App. at 61, 282 So.2d at 413.
In this case the information Claude Green turned in at the police station provided all the recorded circumstances which give rise to the police dispatch. This information fails to establish probable cause. Green observed no criminal activity whatsoever. The data Green provided amounted to mere suspicion: "It just didn't look right . . . it was just the way it was sitting"; "I was reporting something that looked suspicious to me. . . ."
The rule is clear that "a simple assertion of police suspicion is not itself a sufficient basis" for a finding of probable cause. Spinelli v. United States, 393 U.S. 410,89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Eaton v. State,45 Ala. App. 464, 231 So.2d 918 (1970). And, a search cannot be made legal by what it turns up. Shipman v. State, 291 Ala. 484,282 So.2d 700 (1973). This finding is in no manner a retreat from the established proposition that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. Spinelli, 89 S.Ct. at 590. *Page 965 
On the basis of the foregoing authority probable cause for the search was not established. Thus, the search of the defendant's automobile and seizure of the rifles contained therein were conducted in violation of the Fourth Amendment. Therefore the judgment of conviction must be reversed and the cause remanded to the circuit court.
REVERSED AND REMANDED.
All Judges concur.