Hoyt Thomas Nance was indicted by the July 1980, term of the Pike County Grand Jury for first degree theft and conspiracy to commit first degree theft under §§ 13A-4-3, -8-3, Code of Alabama 1975. The jury found him guilty of the lesser included offense of attempt to commit first degree theft. Ala. Code, §13A-4-2 (1975). The State gave both oral and written notice of its intention to invoke the provisions of the Habitual Felony Offender Statute. A sentencing hearing was held at which the State proved three prior felony convictions. The trial court then sentenced appellant to fifteen years' imprisonment. Ala. Code, § 13A-5-9 (c)(1) (1975). Hence this appeal.
Larry Sasser testified that sometime in June 1980, he met United States Treasury Department undercover agent Mike Harris. At the time, Sasser was unaware that Harris was a federal agent. Harris came to his house and expressed his desire to purchase some counterfeit money. Sasser put Harris in contact with a friend, William Cawley.
The three later met at Cawley's residence and discussed the sale of the counterfeit money. Cawley exhibited some counterfeit bills to Harris. Harris told Cawley that he would buy $100,000 of the bogus bills. Sasser *Page 1360 
stated that another meeting was held at Cawley's residence, at which time appellant was introduced to Harris. Sasser stated that appellant wanted to meet Harris and make a deal. The arrangement was for Harris to buy $100,000 of counterfeit money for $20,000.
Subsequently, Sasser and Harris met Cawley at a pre-determined location near Brantley. There Cawley informed Harris that the final meeting was to be held at Gowan's Truck Stop in Montgomery. Harris refused to meet there and the deal stalled. After arriving home, Sasser was called by both Harris and appellant. Both expressed their desire for the deal to be finalized. Another meeting place was chosen, that being the Troy Holiday Inn.
Just before dark on June 25, 1980, Sasser and Harris met an individual named Linwood Ridley in the lounge of the Troy Holiday Inn. There the final details of the transaction were discussed. It was agreed that while Sasser and Ridley left the motel to pick up the bogus money, Harris would bring the $20,000 to appellant in room 140. Sasser and Ridley left the motel and, after traveling a short distance, Ridley handed Sasser some car keys and told him to get the counterfeit money out of a nearby parked car. Sasser exited the vehicle and Ridley immediately drove away. The keys did not fit the car. Sasser stated that it was at this point that he realized that the deal was a "rip-off." He paid a passerby to drive him back to the motel. Once there, he yelled to Harris that the deal was a "rip-off," and was immediately arrested.
Sasser stated that he knew nothing about stealing the $20,000. Based on that, appellant moved to exclude any testimony regarding counterfeit money.
United States Treasury Department undercover agent Mike Harris testified that on June 11, 1980, he was contacted by Coffee County Sheriff's investigator Roger Booth, who informed him of the possibility of counterfeiting activities occurring in the county. Later that day, Harris was introduced to a confidential informant. On June 12, the informant introduced Harris to Sasser. At this meeting, Sasser told Harris that he knew of some individuals who were interested in selling some counterfeit money.
On June 13, Sasser accompanied Harris to the residence of Cawley. After being introduced, Harris and Cawley discussed a sale of $100,000 in bogus bills for $20,000. Cawley gave Harris two counterfeit bills to examine. Another meeting was set for the following day where Harris would be introduced to, as Cawley called him, "the money man." On June 14, Harris and Sasser returned to Cawley's residence where he met appellant, who was using the name of Glenn Pike. Appellant controlled the meeting and confirmed the initial agreement. He informed Harris that another individual had to be contacted before the deal could be finalized. After other meetings and communications, the transaction was set for June 25, at 5:00 p.m. at the Holiday Inn in Troy, Alabama.
At 5:00 p.m. on June 25, Harris and Sasser met with an individual named Linwood Ridley in the motel's lounge. Ridley confirmed the terms of the transaction and suggested methods of successfully passing the counterfeit bills. Ridley suggested that Harris and Sasser follow him to room 140. Room 140 was registered to a "Mr. Glenn Pike." About one minute after Ridley had left, they went to the room, knocked, and entered. Present were Ridley and appellant. It was agreed that while Ridley and Sasser drove to an undisclosed location to pick up the bogus money, Harris would deliver the $20,000 to appellant at the motel room. Harris stated that he understood the agreement to be that he would remain with appellant while he counted the money. Sasser and Ridley left while Harris retrieved the $20,000. He returned to room 140 and handed it to appellant. After Harris handed the money, in a paper bag, to appellant, appellant closed the door. Harris and other agents, deployed around the motel, *Page 1361 
converged on the room, identified themselves, and demanded access to the room. Appellant opened the door and was promptly arrested. Immediately thereafter, Harris stepped out of the room and closed the door to await the return of Sasser.
When Sasser returned, he hastily approached Harris and told him that the deal was a "rip-off." Sasser was then arrested.
Subsequent to Sasser's arrest, a search of the motel room was conducted. Although no counterfeit money was found, a large hole concealed by the bathroom mirror was discovered. The hole opened into a maintenance corridor running between the rooms. A hole was found in the corridor which opened into a maintenance room. Harris took several photographs of the holes, corridor, and maintenance room.
Harris testified that he checked several hotels in Montgomery in the vicinity of Gowan's Truck Stop to determine whether appellant had rented a room. He found that on June 15, a room at the Scottish Inn had been registered in the name of Glenn Pike. The motel manager allowed him to examine the room. Harris found a hole in the wall located behind the bathroom mirror. The hole led to a maintenance room.
Harris stated that appellant was arrested for the federal offense of conspiracy to sell counterfeit money. 18 U.S.C. § 371,471 (Supp. IV 1976). He did not envision theft charges arising out of the investigation. However, when Harris presented his report to the U.S. Attorney's office, he was informed that "the actions of the people involved [were] not for me to buy a hundred thousand dollars in counterfeit. It was to steal the twenty thousand dollars from me." Consequently, he was advised that no federal charge could be made. Rather, the matter should be presented to the proper district attorney's office for action.
United States Treasury Department agent George McDavid testified that he was part of the surveillance team assisting Harris in the counterfeit money purchase at the Troy Holiday Inn. McDavid observed the actions of Sasser, Ridley, and Harris from a van parked near room 140. McDavid stated that he and Harris had agreed to make an arrest once the $20,000 left Harris's control. When McDavid saw Harris hand appellant the money and appellant shut the door, he exited the van, approached the room, identified himself, and demanded entry. Once appellant complied with the request, McDavid arrested him. He gathered the $20,000 which was lying on the bed and returned it to the paper bag. He opined that once appellant received the money and closed the door a theft had occurred. McDavid searched appellant and found two driver's licenses, one in appellant's true name and the other in the name of Glenn Pike. McDavid advised appellant of his Miranda rights, and his testimony established the proper voluntariness predicate. He questioned appellant, who stated, "I don't know what I could tell you at this time." Appellant indicated that there was no counterfeit money in the room. After ascertaining appellant's true identity, appellant told McDavid "that his job was to take the money and get out. . . ." Sasser, Harris, and McDavid testified before the jury to substantially the same facts as these recounted above.
Appellant had previously filed a written motion to suppress all evidence seized on the basis of the illegality of his arrest and non-compliance with the guidelines of Payton v. NewYork, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The motion was never ruled upon by the trial court, and appellant did not request the trial court to rule and did not object to the trial court's failure to rule. Consequently, nothing is presented for our review. Parker v. State, 406 So.2d 1036
(Ala.Cr.App.), cert. denied, 406 So.2d 1041 (Ala. 1981); Boykinv. State, 398 So.2d 766 (Ala.Cr.App.), cert. denied,398 So.2d 771 (Ala. 1981).
 I
Appellant contends that his arrest was illegal as probable cause did not exist. We disagree. *Page 1362 
As we stated in Tice v. State, 386 So.2d 1180, 1183
(Ala.Cr.App.), cert. denied, 386 So.2d 1187 (Ala. 1980):
 "An officer may arrest without a warrant when `a felony has been committed and he has reasonable cause to believe that the person arrested committed it.' Section 15-10-3, Code of Ala. 1975. The rule of reasonable or probable cause is a `practical, non-technical conception.' Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879
(1949). As defined in Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327
(1959):
 "`Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. . . .' (Citation omitted.)
 "In determining whether there is probable cause to arrest, it is not necessary that the officer have before him evidence that would support a conviction for the offense. He need only have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the accused had committed or was committing an offense."
See also Carter v. State, 405 So.2d 957 (Ala.Cr.App.), cert.denied, 405 So.2d 962 (Ala. 1981); Braxton v. State,350 So.2d 753 (Ala.Cr.App. 1977); Knight v. State, 346 So.2d 478
(Ala.Cr.App.), cert. denied, 346 So.2d 483 (Ala. 1977).
In Moore v. State, 415 So.2d 1210, 1216 (Ala.Cr.App. 1982), we stated:
 "`[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' Rudolph v. State, 371 So.2d 962, 964
(Ala.Cr.App.), cert. denied, Ex parte State ex rel Attorney General, 371 So.2d 965 (Ala. 1979). An officer need not possess knowledge of facts sufficient to establish guilt, but more than mere suspicion is required. United States v. Matthews, 615 F.2d 1279, 1284 ([10th Cir.] 1980). Probable cause for arrest is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. State v. Knapp, 294 So.2d 338, 341 (Fla.App. 1974); see 34 Words and Phrases, `Probable Cause'. Probable cause for arrest without a warrant is something less than proof needed to convict and something more than a raw unsupported suspicion; it is a suspicion or belief of guilt that is `well-grounded'. State v. Vaughn, 12 Ariz. App. 442, 471 P.2d 744, 746 (1970); State v. Davis, 50 N.J. 16, 231 A.2d 793, 797 (1967).
 "`In determining whether the police have probable cause to believe that a felony was being committed so as to justify an arrest without a warrant, the sufficiency of the knowledge of the officers must be determined, not by analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasonable man, knowing all the facts which the officers knew from their investigation, would have believed under these circumstances.' Knapp, 294 So.2d at 341."
The presence or absence of probable cause must be determined by examining the circumstances surrounding the arrest. Turk v.State, 53 Ala. App. 106, 298 So.2d 37 (1974). Under certain circumstances, the observed conduct of the suspect may furnish probable cause to arrest. Tiner v. State, 279 Ala. 126,182 So.2d 859 (1966). The identity of the person arrested need not be known in order for probable cause to exist. Sexton v. State,349 So.2d 126 (Ala.Cr.App. 1977).
Payton is not applicable to the instant case as Payton
involved "a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." The facts of this case do not fall within the prohibition expressed in Payton. *Page 1363 
A complete review of the evidence convinces us that probable cause existed for the arrest of appellant. Although Officer Harris did not envision a theft charge arising out of his investigation and arresting agent McDavid did, probable cause existed for appellant to be arrested under either the anticipated federal charge or the ultimate state charges.18 U.S.C. § 3056 (a) (Supp. IV 1976); § 15-10-3, Code 1975.
 II A
The amount of evidence required to establish either probable cause to arrest or probable cause to search, is generally the same. Moore, supra; Nikolic v. State, 384 So.2d 1141
(Ala.Cr.App. 1979), cert. denied, 384 So.2d 1151 (Ala. 1980);Preyer v. State, 369 So.2d 901 (Ala.Cr.App. 1979). A search incident to a lawful arrest does not require a search warrant.Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Consequently, the search of the motel room was legal.
 B
No counterfeit money or other evidence was found and seized during the search of the motel room. Photographs of the holes found by Harris were admitted into evidence. Appellant objected to the admission of the photographs, contending that they were highly prejudicial and incriminating and that no evidence had been presented connecting him with the holes.
 "As a general rule, photographs are admissible in evidence if they are properly verified either by the photographer or a person who is familiar with the subject of the photograph and if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered. Photographs may be admitted if they tend to shed light on, strengthen, or to illustrate other testimony in the case. Carpenter v. State, Ala.Cr.App., 400 So.2d 417, cert. denied, Ala., 400 So.2d 427 (1981); Hurst v. State, [Ala.Cr.App.] 397 So.2d 203, cert. denied, Ala., 397 So.2d 208 (1981); Gamble, McElroy's Alabama Evidence § 123.03 (1), (3rd ed. 1977).
 "It is within the trial court's discretion to determine the sufficiency of preliminary proof offered to identify photographs and to show that they fairly and accurately represent what they purport to be. Only when its exercise is abusive will such be overturned. Carpenter, supra; Hurst, supra; McElroy, § 123.03 (2). Donner v. State, 409 So.2d 461, 464 (Ala.Cr.App. 1981)."
The testimony of Harris clearly established the proper predicate for admission of the photographs. Further, the photographs are relevant as they indicate a means of escape or flight from the motel room once appellant obtained the $20,000. Such would reflect an intent to steal the money. No error was committed by the trial court in admitting the photographs.
 III
Appellant contends that the trial court erred in denying his demurrer to the indictment. He argues that Count Two, which charged criminal conspiracy to commit first degree theft, did not allege the time and place of the theft or sufficient facts establishing that the theft post-dated the conspiracy.
Omitting the formal parts, Count Two of the indictment reads:
 "The Grand Jury of said County charge that before the finding of this indictment: Hoyt Thomas Nance, whose name is to the Grand Jury otherwise unknown, did agree with Linwood Ridley to commit the crime of Theft, 13A-8-3 of the Code of Alabama, with the intent that conduct constituting said offense be performed and that Hoyt Thomas Nance did commit Theft in furtherance of said crime in violation of 13A-4-3
of the Code of Alabama, . . . ." *Page 1364 
Section 13A-4-3 (a), Code of Alabama 1975, defines criminal conspiracy as follows:
 "A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement."
In Wilder v. State, 401 So.2d 151, 160-61 (Ala.Cr.App.),cert. denied, 401 So.2d 167 (Ala. 1981), we stated:
 "The general rule in Alabama is that it is sufficient to charge the elements of the statutory offense in the words of the statute. Gayden v. State, 262 Ala. 468, 80 So.2d 501 (1955).
 "The only qualification to this rule is that the indictment must apprise the accused with reasonable certainty of the nature of the accusation against him, so that he may prepare his defense and plead the judgment of conviction as a bar to any subsequent prosecution for the same offense. United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819 (1877)."
This court's case of Harrison v. State, 384 So.2d 641, 643
(Ala.Cr.App. 1980), also addressed the requirements of a valid indictment:
 "`If there is no indictment form for an offense set out in Code § 15-8-150, then an indictment which closely parallels the language of the statute creating the offense is generally valid. Worrell v. State, Ala.Cr.App., 357 So.2d 373, cert. denied, Ala., 357 So.2d 378 (1978); Manson v. State, Ala.Cr.App., 349 So.2d 67, cert. denied, Ala., 349 So.2d 86 (1977); Code § 15-8-23.
 "Pursuant to Code § 15-8-25, an indictment must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. An indictment must likewise apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed. Chambers v. State, Ala.Cr.App., 364 So.2d 416, cert. denied, Ala., 364 So.2d 420 (1978). See also: Andrews v. State, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977). However, an averment of the means, although one of substance and not of form, is not a constituent or essential element of the offense. The omission of such would render an indictment merely voidable rather than void. Consequently, such a deficiency must be timely
and specifically raised by demurrer. Gaines v. State, 146 Ala. 16, 41 So. 865 (1906); Whitt v. State, Ala.Cr.App. 370 So.2d 730, reversed on other grounds, Ala., 370 So.2d 736 (1978); Jeter v. State, Ala.Cr.App., 339 So.2d 91, cert. denied, Ala., 339 So.2d 95 (1976)."
The failure to timely and specifically demur to the indictment precludes appellate review of the indictment's alleged deficiencies. Flowers v. State, 402 So.2d 1088
(Ala.Cr.App.), cert. denied, 402 So.2d 1094 (Ala. 1981).
In the instant case, the record reveals that appellant was arraigned on August 15, 1980, and entered a plea of not guilty. He did not file his demurrer to the indictment until August 19, 1980.
Based on the foregoing authorities, we find no error on the part of the trial court in overruling appellant's untimely demurrer.
 IV
Appellant contends that the trial court erred in admitting prior conversations between Sasser and Harris made without appellant present. The conversations concerned the purchase of some counterfeit money by Harris. At the in camera hearing appellant objected to admission of any testimony concerning counterfeit money.
Where proof of a conspiracy exists, any act or statement by an accused's *Page 1365 
co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in furtherance of a plan or design, is admissible against the accused. Conley v. State,354 So.2d 1172, 1177-78 (Ala.Cr.App. 1977); Cox v. State, 367 So.2d 535
(Ala.Cr.App. 1978), cert. denied, 367 So.2d 542 (Ala. 1979); see United States v. Araujo, 539 F.2d 287 (2d Cir. 1976);Slater v. State, 356 So.2d 69 (Fla.Dist.Ct.App. 1978). While it is preferable that a co-conspirator testify after the prima facie showing of the existence of a conspiracy, such order of proof is not mandatory. The order of proof requirement is for the purpose of expediting the trial and saving the valuable time of the trial court, rather than protecting or securing any supposed right a defendant might have. Morton v. State,338 So.2d 423, 425 (Ala.Cr.App.), cert. denied, 338 So.2d 428 (Ala. 1976); Conley, supra.
The State's evidence, as a whole, clearly established a conspiracy among the parties. Thus, the conversations between Sasser and Harris were admissible.
 V
The State's evidence proved a prima facie case of attempt to commit first degree theft. Ala. Code §§ 13A-4-2, -8-3. The verdict of the jury is amply supported by the evidence. Thus, the trial court properly denied appellant's motions to exclude and for a new trial.
We have reviewed appellant's contentions on appeal and find no error. This cause is hereby affirmed.
AFFIRMED.
All the Judges concur.