Appellant Leon Mac Morris was indicted by the grand jury of Montgomery County for the murder of Lanette Massey, in violation of § 13A-6-2, Code of Alabama 1975. He was found guilty and was sentenced to life imprisonment. On appeal, he raises three issues.
Officer Fernandez, with the Montgomery Police Department, testified that on July 27, 1986, the police received a report of a dead female lying on the front lawn of a house on South Hull Street in Montgomery. Officer Fernandez and his partner drove to the site and discovered the body of the murder victim, Lanette Massey. After observing that the victim had several bullet *Page 1365 
wounds, Fernandez began investigating the circumstances of the victim's death. At least three persons in the neighborhood where the victim's body was found stated that they heard gun shots in the area at approximately 12:00 midnight on July 26-27, 1986. Several neighbors testified that appellant and the victim had been together the evening of July 26, 1986, and that she was last seen with appellant. One neighbor stated that she had seen the appellant and the victim together as late as 11:45 p.m. on the front porch of appellant's dwelling on the night in question. Several people told police that the appellant and the victim had been romantically involved, and had been together frequently for some months. Others stated that appellant was jealous and possessive of the victim. Police discovered that appellant was staying in a vacant house only a block and a half from where the victim's body was found. Appellant stayed there without the permission of the owners, Fernandez was told, and, he was told, that neighbors had frequently heard gun shots from inside the building. Fernandez also testified that he had received information from someone that appellant had threatened to kill the victim. Based on the foregoing investigation, Fernandez obtained a warrant to search this structure. The search warrant contained essentially the foregoing facts. The police discovered a mattress, some clothes, some bullet holes in the walls, spent bullets, and empty hulls of several calibers. (Some of the bullets found corresponded with the bullets found in the victim's body. This fact, however, was not discovered until after an arrest warrant was issued.) The appellant was arrested, and he subsequently admitted to killing Lanette Massey.
First, appellant contends the court erred in denying appellant's motion to suppress evidence of the spent bullets and the resulting forensic report obtained pursuant to a search warrant issued, he alleges, without probable cause. He argues that the court erred in denying appellant's motion to suppress certain statements made by him to the police following his arrest, which he contends was unlawful. Appellant also contends that the court erred in receiving his statements, in which he admitted guilt, into evidence upon the further ground that they were unlawfully obtained.
 I
In ruling on appellant's motion to suppress evidence obtained as a result of the search, the trial court found that appellant had no reasonable legitimate expectation of privacy in the structure in question for Fourth Amendment purposes. The court did not abuse its discretion in so ruling.
Appellant admitted that he resided at the house without the permission of its owners. He stated that he had slept there some nights over a period of several months, but did not eat or bathe there. The building had no electricity, water, or phone service, and was overgrown with weeds. Appellant stated further that many people drifted in and out of the house and that some slept there. Appellant never tried to stop people from coming in, even though he did not know some of them. The house was not locked.
The issue is, of course, whether the Fourth Amendment rights of the appellant were violated. See, Rakas v. Illinois,439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In United Statesv. Haydel, 649 F.2d 1152 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated the analysis in this way:
 "No one circumstance is talismanic to the Rakas inquiry. 'While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of. . . [the] inquiry.' United States v. Salvucci, 448 U.S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980) (citation omitted). Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he had the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental *Page 1366 
invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises. See id.; Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)."
In this case, appellant was an intruder, a squatter, on the premises. He was not legitimately using the premises and admitted that he had no permission to use them. Appellant knew other people used the house, knew that he did not have the right to exclude them, and did not try to exclude them. SeeSearch and Seizure, A Treatise on the Fourth Amendment, LaFave (2d ed. 1987). The burden is on the defendant to establish that his presence was not wrongful. We find that the trial court did not abuse its discretion in holding that the search did not violate appellant's Fourth Amendment rights. Furthermore, although appellant fails to fully address whether there was probable cause to issue a search warrant, we conclude that there was. Generally, probable cause to search exists "where facts and circumstances within the knowledge of the officer . . . and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime." Jones v. State, 493 S.W.2d 933
(Tex.Cr.App. 1973). Given the above facts, we conclude that probable cause to search appellant's "residence" for the purpose of finding evidence relating to the victim's death was established.
 II
Appellant next contends that his arrest was illegal in that the warrant for his arrest was issued without probable cause. Thus, he contends, any statements made to the police were tainted by the illegal arrest and should have been suppressed. Specifically, appellant alleges that because the affidavit attached to the arrest warrant merely set forth the statutory authority for issuing the warrant, the judicial officer issuing the arrest warrant made no independent judgment that probable cause to arrest existed, as required in Whiteley v. Warden,Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031,28 L.Ed.2d 306 (1971).
The affidavit in support of the arrest warrant is not sufficient to satisfy the probable cause requirements of the Fourth Amendment. However, such an affidavit may be cured by oral testimony "when the affiant has the information in his possession which he disclosed to the issuing magistrate before obtaining the warrant." Morrison v. State, 398 So.2d 730
(Ala.Cr.App. 1979), rev'd on other grounds, 398 So.2d 751 (Ala. 1981), on remand, 398 So.2d 751 (Ala.Cr.App. 1981), appeal after remand, 500 So.2d 36 (Ala.Cr.App. 1985), aff'd,500 So.2d 57 (Ala. 1986); Malone v. State, 51 Ala. App. 19, 282 So.2d 367
(1973).
The affiant, Montgomery Police Officer Gary Ingle, testified that, in addition to the information contained in the affidavit, he told the issuing magistrate about appellant's romantic relationship with the victim and his jealousy of her. He also told the magistrate that the victim was last seen alive in the company of the appellant about fifteen minutes before she was killed, and that appellant carried a gun and had threatened to kill the victim. He informed the magistrate that spent bullets were found at the house where appellant resided and that the victim was found a block and a half from appellant's dwelling.
In Moore v. State, 415 So.2d 1210 (Ala.Cr.App. 1982), we stated:
 " '[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' Rudolph v. State, 371 So.2d 962, 964 (Ala.Cr.App.), cert. denied, Ex parte State ex rel. Attorney General, 371 So.2d 965 (Ala. 1979). An officer need not possess knowledge of facts sufficient to establish guilt, but more than mere suspicion is required. United States v. Matthews, 615 F.2d 1279, 1284 ([10th Cir.] 1980). Probable cause for arrest is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing *Page 1367 
the accused to be guilty. State v. Knapp, 294 So.2d 338 (Fla.Ct.App. 2nd Dist. 1974)."
We conclude that the supplemental oral testimony established overwhelming probable cause for the issuance of the arrest warrant. The trial court correctly ruled that appellant's arrest was valid and did not abuse its discretion in denying appellant's motion to suppress his statements to police as a result of the arrest.
 III
Appellant also contends that his statement was not voluntary because it was made without waiver of counsel and was obtained though a subterfuge.
On July 28, 1986, appellant was arrested and transported to the Montgomery Police Station. He was advised of his constitutional rights when placed in the patrol car and was advised again at the police station. He voluntarily made a statement to police, in which he denied any knowledge of the homicide. On July 29, appellant requested an attorney and he was not questioned after this request.
On July 31, Fernandez took appellant out of his cell in order to obtain handwriting samples from appellant. The handwriting samples were needed to ascertain whether appellant had signed certain pawn tickets and a pistol permit application. On this same day, an attorney was appointed by the district court, although neither the police nor appellant knew of this at the time. Appellant asked Officer Fernandez if they were going to take a statement from him. Fernandez replied that they were not because appellant had requested an attorney and they were not permitted to question him further. Appellant then asked, "What if I tell you that I killed the bitch." Fernandez asked appellant if he was waiving his right to an attorney, appellant replied that he was. Appellant, promptly advised of his rights, waived his right to an attorney and signed a waiver of rights form. Appellant then gave a statement, which was videotaped, in which he admitted that he shot the victim.
In Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682,64 L.Ed.2d 297 (1980), the U.S. Supreme Court held:
 "[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda
refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response"
When appellant left his cell in the custody of Officer Fernandez, it was for the purpose of obtaining a handwriting sample, not for the purpose of interrogation. It was appellant who initiated the conversation and made the subsequent statement, "What if I tell you that I killed the bitch." There is nothing to indicate that the officer should have known that their conversation was reasonably likely to elicit an incriminating response from the respondent. Appellant's removal from his cell was not the "functional equivalent" of questioning.
It is generally agreed that an arrested person who asserts his right to counsel may thereafter change his mind and submit to questioning voluntarily. United States v. Hodge,487 F.2d 945 (5th Cir. 1973). *Page 1368 
Here, the appellant later contended that he gave the statement because he was afraid that Fernandez would hit him because Fernandez had previously hit him in the patrol car. Appellant also testified that Fernandez was guilty of resuming the interrogation. He said that the officer's claimed need for handwriting samples was merely a pretext with the true purpose of securing admissions. However, it is clear that Fernandez needed the handwriting samples to prove that, in fact, appellant had signed various pawn tickets for guns and pistol permits and that appellant had lied in a previous statement given to police denying any knowledge thereof. The court determined that appellant was advised of his rights and voluntarily made statements to the police. The court's ruling in connection with appellant's motion to suppress his statements will not be disturbed on appeal unless it is clearly erroneous. Simmons v. State, 368 So.2d 315 (Ala.Cr.App. 1979).
There is more than sufficient evidence supporting the court's conclusion that appellant's statement was voluntary. Accordingly, we uphold the court's decision in this issue.
 We find no error committed by the trial court. AFFIRMED.
All the Judges concur.