The appellant, Sylvester Ephraim, was convicted of murder made capital because the murders occurred during the course of a robbery. § 13A-5-40(a)(2), Code of Alabama 1975. The jury, by a vote of 11 to 1, recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The state's evidence tended to show that the bodies of Napoleon and Lena Bell Goodson were discovered in their house on June 11, 1990. Mr. Goodson died as a result of a shotgun wound to his leg. Mrs. Goodson was shot in the right side of the neck with a .22 caliber rifle and died as a result of the injury.
 I
The appellant initially argues that his constitutional rights were violated by the court's refusal to allow him to testify in his own behalf at the guilt phase of the proceedings. The record reflects that prior to the presentation of the defense's case, the court asked the appellant whether he wished to take the stand and to testify in his own behalf. At this time the appellant stated that he did not wish to testify. The defense then called one witness and rested its case. It appears from the record that the court, defense counsel, and the prosecutor were present at a charge conference when the trial court was notified that the appellant had changed his mind and wished to testify. He told the court that he wanted to tell his side of the story. At this time, closing arguments of counsel had not been made and nothing had occurred in the presence of the jury after the defense rested its case. The court refused to allow the appellant to testify, stating that the appellant had had his chance to testify, that he had waived that right and that the court was not now going to allow the appellant to disrupt the proceedings.
The right of an accused to testify in his own behalf is firmly rooted in our legal system. The Alabama Constitution of 1901, Art. I, § 6, grants to an accused the following rights, among others:
 "That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to testify in all cases, in his own behalf, if he elects so to do . . . ."
(Emphasis added.)
The right to testify is derived from Amendments V and VI of the United States Constitution. "The Sixth Amendment does not provide merely that a defense shall be made for the accused;it grants to the accused personally the right to make hisdefense." Faretta v. California, 422 U.S. 806, 819,95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). (Emphasis added.) The United States Supreme Court has specifically held that an accused has a right to testify. Rock v. Arkansas, 483 U.S. 44,107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).[1] *Page 1104 
 "At common law the defendant in a criminal case was not a competent witness in his own behalf.
". . . .
 "A riper wisdom and experience decreed that it were better not to close the mouths of parties, even in criminal cases. . . ."
Turner v. State, 238 Ala. 352, 191 So. 396, 397-98 (1939). An accused's right to testify in his own behalf has evolved full circle from the common law days.
As early as 1896, the Supreme Court of Alabama had two occasions to interpret the phase in the Alabama Constitution, "the right to be heard." The Court stated:
 " '[An accused] has a right to be heard by himself and counsel, or either.' . . . This provision guarantees him the right to be heard on all questions of law and fact which may arise at any time during the prosecution, and it implies that he shall have full opportunity and time, as justice and the necessities of the case may require.
Necessarily, the trial court is invested with a large and very responsible discretion in determining and affording to the accused the full measure of his constitutional right. Like any other adjudication by the trial court involving the rights of a party on trial, its judgment is revisable by this court. When the question is presented here, we determine whether the discretion has been abused, whether the party has been deprived of his right to be fully heard, as provided."
Peagler v. State, 110 Ala. 11, 20 So. 363, 364 (1896). (Emphasis added.) The Alabama Supreme Court has further stated:
 "Wherever a like constitutional provision prevails, it is the uniform course of judicial decision that in criminal prosecutions, upon all matters or questions of fact triable by jury, the accused or his counsel must be heard; and that the court, whatever may be the opinion it entertains of the clearness, weight, or conclusiveness of the evidence, cannot deny or withhold the right. But it is generally, if not universally, conceded, that the court has, and of necessity must have, a discretion in regulating the exercise of the right; or otherwise, without benefit to the accused, it might be abused, and perverted into a hindrance or obstruction to the administration of justice. The discretion is not irreversible. It is subject to revision in a higher tribunal; and if it appears that it was not justly, prudently exercised, there would be a reversal of the judgement of conviction. . . . The discretion is not mere power to be exercised because it exists; nor is it to be exercised capriciously or arbitrarily; and, in its exercise, it should always be borne in mind that it is a high constitutional right of the accused it is proposed to regulate."
Crawford v. State, 112 Ala. 1, 21 So. 214, 220 (1896). " 'The term "right to be heard by himself" is to be construed in its broadest sense in favor of an accused.' " Woods v. State,38 Ala. App. 581, 90 So.2d 91, 92 (1956). See also Carter v. State,424 So.2d 1336, 1340 (Ala.Cr.App. 1982). Marjorie L. Rifkin,The Criminal Defendant's Right to Testify: The Right to Be Seenbut Not Heard, 21 Colum.Hum.Rts.L.Rev. 253 (1989-90).
The following occurred when the appellant made known to the court that he had changed his mind and that he wished to testify in his own behalf:
 "The Court: . . . [Y]ou indicated through Mr. Reynolds and then after I explained it all to you, you indicated to me that you were going to exercise your right not to testify; isn't that right?
"The Defendant: Yes, sir.
 "The Court: Right. The State has rested, the defense has rested. The State has not called any further witnesses. Didn't I announce to the jury that the evidence is over and the next thing that would happen would be closing arguments?
"The Defendant: Yes, sir.
"The Court: Didn't you hear that?
"The Defendant: Yes, sir.
 "The Court: It is over. I'm not going to reopen the case.
 "The Defendant: Let me ask you a question, Judge. See I feel like I should have the right to tell my half to see because they still —
 "The Court: You just wait a minute. What do you think I have been doing in *Page 1105 
there this morning? What do you think I explained all of that stuff to you for? Didn't you tell me you understood it all?
"The Defendant: Well, see —
"The Court: Answer my question.
"The Defendant: I told you that."
The appellant argues in his brief that he wanted to testify because, he says, he was the only one who could tell the jury his version of the facts and his state of mind at the time of the killings. The state argues that it was within the discretion of the trial court whether to reopen the case. Rule 19.1, A.R.Crim.P. We realize that the trial court has discretion in scheduling and in determining courtroom procedure; however, when the exercise of that discretion results in the denial of a basic constitutional right, we must find that that discretion has been abused. Here, the appellant faced the ultimate penalty — death. The appellant in this case was denied the most basic of constitutional rights, the right to be heard and to present his own defense. Ala. Const. of 1901, Art. I, § 6.
In situations where closing arguments had been made before the defendant reasserted his right to testify, a court's reluctance to reopen the case would perhaps be more excusable. We do not have that situation here. In this case nothing had been presented to the jury when the appellant asked to take the stand. No closing arguments had been made and the only action that had been taken was a charge conference, which occurred off the record and outside the presence of the jury. We are compelled to reverse the trial court's judgment. The appellant was denied his constitutional right to a fair trial. Though we conclude that the court's judgment is due to be reversed in this issue, we have chosen to address other issues that may be raised in subsequent proceedings.
 II
The appellant argues that the trial court erred in allowing the following statement by the appellant's co-defendant, Nathaniel Gilder, to be received into evidence at the appellant's trial. The following occurred during the questioning of Officer Howard Rogers of the Prattville Police Department:
 "Q [Prosecutor] — Mr. Rogers, you were about to tell us what Nathaniel Gilder said. Would you tell us, please?
 "A — Nathaniel Gilder stated to me that he [knew] why we stopped him — they had kill[ed] the Goodsons. . . ."
We agree with the appellant that this statement should not have been received into evidence. The statement was hearsay; clearly, it was a statement not made in the presence of the court that was offered "to prove the truth of the matter stated" therein. C. Gamble, McElroy's Alabama Evidence § 242.01(1) (4th ed. 1991).
The state contends that even though this statement is hearsay, it is admissible because it is the statement of a co-conspirator made in furtherance of the conspiracy.McElroy's, § 195.03. " 'Any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy, and in furtherance of a plan or design, is admissible against the accused.' " Leonard v. State,459 So.2d 970, 972 (Ala.Cr.App. 1984), quoting Nance v. State,424 So.2d 1358 (Ala.Cr.App. 1982). These facts do not fit that exception to the hearsay rule.
We agree with the appellant's analysis that the statement was not made in furtherance of the conspiracy and that the conspiracy had ended when the statement was made. The state counters this argument by stating that the conspiracy was ongoing because, it says, the conspiracy necessarily included the disposal of the weapons used in the murders. While we do not necessarily agree with the state's reasoning, the facts are not as the state presents. There had already been testimony that the weapons had been disposed of earlier that day and that no weapons had been recovered in the vehicle at the time of the arrest. From the evidence, it appears that even if the disposal of the weapon constituted part of the conspiracy, the conspiracy had concluded before the arrest and the statement was not made in "furtherance" of the conspiracy. Rogers' testimony regarding the statement should not have been introduced at the appellant's trial. *Page 1106 
 III
The appellant also argues that the prosecutor, in his guilt phase closing argument, commented on the appellant's failure to testify. The following occurred during closing arguments:
 "Judge is going to tell you about circumstantial evidence and some of the evidence in this case is circumstantial evidence. It is circumstantial because the only people that know what happened out there that night are this man and two other men. So we don't have the direct evidence that we would have in some cases."
The courts of this state have not been reluctant to reverse the judgment in a case when a prosecutor has commented on an accused's failure to testify. Ex parte Williams, 461 So.2d 852
(Ala. 1984); Beecher v. State, 294 Ala. 674, 320 So.2d 727
(1975); Stain v. State, 494 So.2d 816 (Ala.Cr.App. 1986). A comment on an accused's failure to testify violates the accused's constitutional right not to testify. This comment may well have been construed by the jury to be a reference to the appellant's failure to testify.
 IV
The appellant also argues that the court's instructions on circumstantial evidence were flawed. We agree. The state candidly admitted at oral argument and in its brief that the court's instruction on circumstantial evidence was incomplete because the court did not instruct the jury on the degree of proof necessary to sustain a conviction based on circumstantial evidence.
 V
The appellant contends that his arrest was illegal and that, therefore, statements he made after his arrest should have been suppressed. The appellant, at no time during his trial, questioned the validity of his arrest and a suppression hearing was not held regarding the introduction of the statements.
The following testimony was presented concerning the establishment of probable cause to arrest the appellant. Officer Rogers testified that he had seen the appellant and Gilder in a brown Maverick automobile at the crime scene when he went to investigate the murders. He testified that he also had seen the appellant and Gilder later that day in the Maverick. Officer Rogers also stated that he received a tip concerning the appellant and the Maverick automobile and that from that information he proceeded to look for the suspects. When Rogers located and approached the Maverick, he turned on the blue lights of his police car. The car sped away, and Rogers pursued and stopped the Maverick. Rogers and another officer approached both sides of the car and told the appellant and Gilder to exit the vehicle. As they were exiting the vehicle, Gilder told police that he knew why the police had stopped them because they had killed the Goodsons. At this point probable cause was established to arrest the occupants of the car. While more testimony could have been presented concerning the probable cause to arrest the appellant, we conclude from the testimony that the arrest was lawful.
The evidence also showed that the appellant was read hisMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), rights and voluntarily waived them. Also there was no evidence that the statements were the product of coercion or threats. The statements were correctly received into evidence.
 VI
The appellant also argues that the state failed to prove an adequate chain of custody regarding certain items of evidence. The appellant contends that the state failed to prove an adequate chain of custody of two audio tapes that were received into evidence. It is not necessary that a chain of custody be proved for audio tapes to be received into evidence. All that is required is that a witness testify that the recording is a "reliable representation of the subject sound." Wyatt v. State,620 So.2d 77, 79 (Ala.Cr.App. 1992), quoting Molina v. State,533 So.2d 701, 712 (Ala.Cr.App. 1988), cert. denied,489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989). Officer Perry Beasley, who recorded the audio tapes, testified that the recordings "accurately depict[ed] the conversation[s]" that he had with the appellant. This testimony was *Page 1107 
a sufficient predicate for the audio tapes to be received into evidence.
The appellant also argues that the state failed to prove an adequate chain of custody for "the majority of the ballistics evidence." We have reviewed the testimony concerning the ballistics evidence and find no reversible error as to the chain of custody.
For the reasons stated above, the appellant's conviction is reversed and his sentence to death is vacated. This cause is remanded to the Circuit Court for Autauga County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.
[1] Although the United States Constitution does not specifically provide that an accused has the right to testify, the United States Supreme Court based its decision in Rock on the rights derived from the Fifth and Sixth Amendments.