WINDOM, Presiding Judge.
Lameca Dechawn Turner appeals his conviction for capital murder and his sentence of death. Turner was convicted of murder made capital for taking the life of Prakaschandra Shah during the course of a robbery. See § 18A-5-40(a)(2), Ala. Code 1975. The jury, by a vote of 11-1, recommended that Turner be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Turner to death.
For the most part, the facts of Turner’s crime are uncontested. On April 20, 2004, Hepal Shah, Shah’s son-in-law, was working at the Petro Southeast Mini-Mart convenience .store in Dothan. Shah went to the Mini-Mart to take Hepal some food. While Shah was there, Hepal went into the back of the store to stock a cooler. While Hepal was in the back of the store, Turner, Ray Grace, and Cordell Turner entered the store to commit a robbery. Turner pointed a 9mm semi-automatic pistol at Shah, and Shah said “no, no, no, no.” (C. 774.) At some point during the robbery, Turner shot Shah in the lower abdomen and the bullet exited Shah’s body through his buttocks. After shooting Shah, Turner and his accomplices fled. Shah died as a result of the gunshot wound.
After the crime, Turner was arrested, was read his Miranda[1] rights, and was interrogated by Corporal Frank Meredith, Lieutenant Tony Luker, and Captain Steve Parrish of the Dothan Police Department. Initially, Turner denied any involvement in the robbery/murder. However, during the course of the interrogation, the officers confronted him with confessions of his two accomplices, which implicated Turner. Specifically, the accomplices had both informed the officers that Turner was involved in the robbery and that he was the individual who shot Shah. Captain Parrish informed Turner that his accomplices were “saying that [Turner had] murdered somebody.” (C. 769.) Captain Parrish also stated:
“[Grace and Cordell] said that you shot that clerk. They showed how you done it. When [Shah] grabbed the phone you said f* * * this and you shot.”
*941 (C. 766.) Later, one of the police officers could be heard repeating the accomplices’ statements that Turner said “f* ⅜ * this” and shot Shah.
After being repeatedly confronted with his accomplices’ confessions, Turner confessed. Turner stated that he went to the Mini-Mart with Grace and Turner to rob it. Turner explained that he had the pistol and that he shot Shah. Turner, however, denied that he shot Shah intentionally. According to Turner, while he was holding the pistol, he accidentally fired the pistol, shooting Shah. After he accidentally shot Shah, he ran out of the store.
At trial, defense counsel’s theory of the case was that Turner was not guilty of capital murder because he did not intend to shoot and kill Shah. During voir dire of the potential jurors, defense counsel informed the venire that the defense stipulated that Turner went to the store to commit a robbery. He was armed with a 9mm pistol. While Turner had the pistol, a shot was fired that struck Shah, and Shah died as a result of the gunshot wound. Counsel then told the venire that intent would be the only issue at trial. Specifically, counsel informed the venire that it was the defense’s position that Turner shot Shah accidentally.
Later, defense counsel began his opening statement by declaring: “[Ijt’s not capital murder, ladies and gentlemen.” (R. 267.) “What [Turner] is here for today[,] he’s not asking you to let him go. He’s here to ‘fess up and tell you what he did was horrible.” (R. 267.) Counsel stated that Turner went to the store to commit a robbery and that he accidentally shot Shah. Counsel then said:
“[Turner] is here today to tell you that he committed a murder or a manslaughter, but not capital [murder]. There is no way that this is capital murder. There is no way to prove or to show that he intentionally did this. No intent.... The shooting was not intentional and it was not planned. That part was an accident. Now, it’s a horrible tragedy for [the Shah] family. [Turner has] got to live with it. And he’s going to pay the price to society. But he should not be facing capital murder.”
(R. 268-69.)
At trial, to rebut Turner’s defense that the shooting was an accident, the State presented Terry Hanks, an individual who was incarcerated with Turner in the Houston County jail. According to Hanks, he and Turner were housed in different cells, and Turner confessed to him through the air-ventilation system. Specifically, Hanks testified that Turner stated through an air vent that “he shot [Shah] because he wouldn’t give him the money.” (R. 386.)
The State also admitted into evidence the recording of Turner’s interrogation in which the officers stated that Turner’s accomplices had told them that Turner intended to shoot Shah. The recording also contained a police officer’s statement that the accomplices had informed the officers that when Shah “grabbed the phone[J [Turner] said f* * * this and [he] shot.” (C. 766.)
Later, during Corporal Meredith’s testimony, the following occurred:
“Q: If I could, let me ask you, Mr. Meredith, if I could, the questions are asked by Lt. Luker or Parrish or yourself to elicit a statement from the defendant the terminology we used that, we know you didn’t mean to do it, an accident, was there any evidence to show that it was an accident?
“A: No, sir.
“Q: Would you tell the ladies and gentlemen of the jury, explain to them when you do an interview why you used term *942 or terms used to a defendant Lameco [sic] Turner? Why do you say that? “A: It’s used in our experience and training it’s used to elicit a response. We know the evidence from the other two co-defendants, their statements, led us to believe that [Turner] said, pardon me, f* * * this, and shot the man. We knew it wasn’t an accident for that statement and then the shooter.”
(R. 585-86.)
After the State rested its case, defense counsel presented evidence indicating that Hanks believed that he would be given favorable treatment for his testimony against Turner. Specifically, Rhyeem Kinsey, an individual who had been incarcerated with Hanks, testified that he overheard Hanks say that Hanks was going to testify against Turner in exchange for “going home.” (R. 685.) Kinsey said Hanks’s “exact words were that if the State sticks to what they said they were going to do, then, I’m going to tell them that [Turner] robbed the guy and that [Turner] did the shooting.” (R. 686.)
During closing arguments, the State used Turner’s accomplices’ statements to the police to show that Turner intended to shoot Shah:
“And you heard in the course of [Turner’s] statement it was recorded that that’s what Cordell [Turner] and Ray [Grace] said.... That you heard Steve Parrish and Tony Luker, or one or them two of them or maybe Frank, say, [the accomplices] said that you shot the man because he wasn’t giving you the money. That is what happened.”
(R. 717.) Defense counsel objected to the State’s argument on the grounds that it relied on hearsay and on facts not in evidence. The State responded that “it is in the statement that was played.” (R. 717.) After the State’s response, the circuit court overruled defense counsel’s objection.
At the conclusion of the trial, the jury found Turner guilty of capital murder. Thereafter, the jury recommended that Turner be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Turner to death.
On appeal, Turner argues, among other things, that the State improperly used the statements of his nontestifying accomplices.[2] Specifically, Turner argues that the State’s admission of evidence consisting of his accomplices’ out-of-court confessions to law enforcement constituted inadmissible hearsay and violated his right to confront the witnesses against him. See Rule 802, Ala. R. Evid.; U.S. Const. Amend. VI. Although Turner objected to the State’s use of the statements during closing arguments, he did not object to the admission of his accomplices’ statements; therefore, he failed to properly preserve this issue for appellate review. C.B.D. v. State, 90 So.3d 227, 237-38 (Ala.Crim.App.2011) (“In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated and a ruling on the objection must be made by the trial court.” (citations and quotations omitted)).
However, because Turner has been sentenced to death, his failure to preserve this issue is not fatal to his appeal. Rather, this Court must notice any plain error. Rule 45A, Ala. R.App. P. Rule 45A states:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the *943 attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
(Emphasis added.)
In Ex parte Brown, 11 So.3d 933 (Ala.2008), the Alabama Supreme Court explained:
“ ‘ “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.’” Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002) (quoting Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App. 1998)). In United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the United States Supreme Court, construing the federal plain-error rule, stated:
“‘The Rule authorizes the Courts of Appeals to correct only “particularly egregious errors,” United States v. Frady, 456 U.S. 152, 163 (1982), those errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings,” United States v. Atkinson, 297 U.S. [157], at 160 [ (1936) ]. In other words, the plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.” United States v. Frady, 456 U.S., at 163, n. 14.’
“See also Ex parte Hodges, 856 So.2d 936, 947-48 (Ala.2003) (recognizing that plain error exists only if failure to recognize the error would ‘seriously affect the fairness or integrity of the judicial proceedings,’ and that the plain-error doctrine is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result’ (internal quotation marks omitted)).”
11 So.3d at 938. “The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal.” Hall v. State, 820 So.2d 113, 121 (Ala.Crim. App.1999). Thus, although Turner’s failure to object will not bar this Court from reviewing any issue, it will weigh against any claim of prejudice. See Dill v. State, 600 So.2d 343 (Ala.Crim.App.1991).
“The Sixth Amendment’s Confrontation Clause provides that, ‘[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.’ ” Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Thus, “the Sixth Amendment [prohibits the admission of] testimonial hearsay [statements offered for the truth of the matter asserted], ... and interrogations by law enforcement officers fall squarely within that class.” Crawford, 541 U.S. at 53; see also id. at 59 n. 9; (citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985) (explaining that the Confrontation Clause “does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted”)). Similarly, under the Alabama Rules of Evidence:
“ ‘Hearsay is not admissible except as provided by [the Alabama Rules of Evidence], or by other rules adopted by the Supreme Court of Alabama or by statute.’ Rule 802, Ala. R. Evid. ‘“Hearsay” is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.’ Rule 801(c), Ala. R. Evid.”
*944 Hillard v. State, 53 So.3d 165, 167 (Ala.Crim.App.2010). Accordingly,
“It is well settled that[, when offered for the truth of the matter asserted,] a non-testifying codefendant’s statement to police implicating the accused in the crime is inadmissible against the accused; it does not fall within any recognized exception to the hearsay rule and ... [it] violates the accused’s confrontation rights. See Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); R.L.B. v. State, 647 So.2d 803 (Ala.Crim. App.1994); Ephraim v. State, 627 So.2d 1102 (Ala.Crim.App.1993).”
Jackson v. State, 791 So.2d 979, 1024 (Ala.Crim.App.2000). See also Lilly v. Virginia, 527 U.S. 116, 139, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (holding that the admission of an accomplice’s out-of-court confession violated the petitioner’s Confrontation Clause rights); Hillard, 53 So.3d at 169 (holding that a codefendant’s statement to police was inadmissible hearsay under Rule 802, Ala. R. Evid.).
Here, the State offered evidence establishing that Turner’s accomplices gave confessions to police officers and, in those confessions, stated that, during the commission of the crime, Shah “grabbed the phone[, and Turner] said f* * * this and ... shot [Shah].” (C. 766.) The State also offered evidence that the accomplices told the police officers that Turner murdered Shah. The confessions of Turner’s accomplices to police officers were, without a doubt, testimonial. Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177, 195, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (quoting Crawford, 541 U.S. at 68 (explaining that “ ‘[whatever else the term [“testimonial”] covers, it applies at a minimum ... to police interrogations’ ”)). Further, during closing arguments, the State used the accomplices’ statements to show that Turner intended to kill Shah. See R. 717 (arguing that the accomplices’ statements establish that Turner shot Shah because Shah would not give them money). The State’s use of the accomplices’ statements during closing argument leaves no room to doubt that the statements were offered for the truth of the matter asserted. Accordingly, the introduction of statements by Turner’s non-testifying accomplices to police officers during their interrogations violated Turner’s right to confront the witnesses against him, constituted inadmissible hearsay, and “adversely affected [his] substantial right[s].” Rule 45A, Ala. R.App. P. See also Jackson, 791 So.2d at 1024.
The introduction of the accomplices’ statements not only “adversely affected [Turner’s] substantial right[s],” Rule 45A, Ala. R.App. P., but “also ha[d] an unfair prejudicial impact on the jury’s deliberations.” Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002) (citations and quotations omitted). As stated above, Turner conceded that he went to the Mini-Mart to commit a robbery, and, during the robbery, he shot and killed Shah. Turner’s sole defense was that he did not intend to kill Shah; instead, he argued that he shot Shah accidentally. To rebut Turner’s defense, the State presented evidence establishing that Turner shot Shah, and it asked the jury to draw the inference that Turner intended Shah’s death from the fact that he used a deadly weapon. However, Shah was shot in the lower abdomen near his pelvis and the bullet exited his body through his buttocks. Thus, although the jury could have inferred an intent to kill by the use of a deadly weapon, it also could have inferred from the location of Shah’s wound that Turner did not intend to kill him. The State also presented testimony from *945 Hanks, an inmate, who said Turner confessed to him through an air vent that “he shot [Shah] because [Shah] wouldn’t give him the money.” (R. 386.) Defense counsel, however, presented evidence tending to impeach Hanks’s testimony. Specifically, defense counsel presented evidence indicating that Hanks had received favorable treatment. Further, Kinsey testified that he heard Hanks’s statement that he was testifying against Turner in exchange for being allowed to “go home.” Although the use of a deadly weapon and Hanks’s testimony was some evidence of Turner’s intent, that evidence cannot be characterized as overwhelming.
Rather, the most damning evidence the State presented to show that Turner intended to kill Shah was the accomplices’ statements and Corporal Meredith’s testimony relating to those statements. From the accomplices’ statements, the jury knew that, during the robbery, Shah “grabbed the phone[, and Turner] said f* * * this and ... shot him.” (C. 766.) Further, Corporal Meredith testified that the accomplices’ statements established that the shooting was intentional. Clearly, the accomplices’ statements and Corporal Meredith’s testimony that they “knew [that the shooting] wasn’t an accident from [the accomplices’] statement[s]” (R. 585-86), struck at the heart of Turner’s only defense and undoubtedly impacted the jury’s deliberations.
Accordingly, this Court holds that plain error resulted from the introduction of evidence of Turner’s nontestifying accomplices’ confessions in violation of Turner’s right to confront the witnesses against him and in violation of Rule 802, Ala. R. Evid. As a result, this Court reverses Turner’s conviction and sentence of death and remands this cause for further proceedings.
REVERSED AND REMANDED.
WELCH, KELLUM, BURKE, and JOINER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Although Turner raises numerous issues on appeal, this Court addresses only one.