Rel: December 16, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

―――――――――――――――

## CR-21-0024

―――――――――――――――

## A.P.S.

## v.

## State of Alabama

## Appeal from Blount Juvenile Court
## (JU-18-7.01)

On Application for Rehearing

McCOOL, Judge.

This Court's opinion issued on August 5, 2022, is withdrawn, and the following opinion is substituted therefor.

A.P.S. appeals an order of the Blount Juvenile Court transferring him to the Blount Circuit Court for prosecution as an adult on a charge

of capital murder. For the reasons set forth herein, we reverse the transfer order and remand the case for further proceedings.

Facts and Procedural History

Around midnight on December 15, 2017, Ricardo Santiago Gonzalez and Adalberta Chavez Ruiz were murdered in their residence; the murder weapon was a handgun. In January 2018, Gonzalez and Ruiz's 17-year-old son Leo Chavez was charged with capital murder in connection with his parents' deaths.[1] In a delinquency petition filed that same month, A.P.S., who was 14 years old when the murders occurred, was also charged with capital murder. The State subsequently filed a motion to transfer A.P.S. to the circuit court for prosecution as an adult. See § 12-15-203(a), Ala. Code 1975. Before the transfer hearing occurred, Chavez was convicted of capital murder and was sentenced to life imprisonment without the possibility of parole.

As with all transfer hearings, the transfer hearing in this case consisted of two phases: (1) a probable-cause phase, during which the

---

[1]"This Court may take judicial notice of its own records." Doster v. State, [Ms. CR-20-0300, December 17, 2021] ___ So. 3d ___, ___ n.1 (Ala. Crim. App. 2021).

juvenile court was required to determine "whether there is probable cause to believe that [A.P.S.] committed the alleged crime," and (2) a dispositional phase, during which the juvenile court was required to determine "whether it is in the best interest of [A.P.S.] or the public to transfer [A.P.S.] to the circuit court to stand trial as an adult." J.S.A. v. State, 615 So. 2d 1288, 1290 (Ala. Crim. App. 1993). The State's only witness at the probable-cause phase of the transfer hearing was Investigator Leonard Chambless of the Blount County Sheriff's Department, whose testimony provided the following facts.

On December 17, 2017, Inv. Chambless responded to Gonzalez and Ruiz's residence because members of Ruiz's family had found blood in the residence and had filed a missing-persons report. Upon entering the residence, Inv. Chambless found "a blood-soaked couch," "a chunk of hair and scalp on the top of the stove," and "bags of bloody rags and a bloody mop." (R. 27-28.) Neither Gonzalez nor Ruiz was in the residence, and two vehicles – a Chevrolet S-10 truck and a Cadillac Escalade sport-utility vehicle – were missing from the property.

Two days later, law enforcement officers in Chattanooga, Tennessee, stopped Chavez while he was driving the Escalade and took

him into custody, and the officers subsequently found the S-10 truck, which was also in Tennessee. After obtaining a search warrant, Inv. Chambless searched both vehicles and found blood in the bed of the S-10 truck and various receipts in both the truck and the Escalade; Chattanooga law enforcement officers also found two handguns in the Escalade when they arrested Chavez. However, according to Inv. Chambless, at the time of the transfer hearing it was "undetermined" whether either of those handguns had been used to murder Gonzalez and Ruiz. (R. 94.)

Based on the receipts he found in the vehicles, Inv. Chambless obtained surveillance videos from a Mapco gasoline service station in Collinsville and a Cricket brand cellular-telephone store in Oneonta. The surveillance video from the Mapco service station reflects that, at some unspecified time on the morning of December 16, 2017 – after Gonzalez and Ruiz had been murdered – both the S-10 truck and the Escalade were at the service station, and A.P.S. can be seen on that video. (R. 37.) The surveillance video from the Cricket store reflects that Chavez, A.P.S., and Jose Villanueva were in the store on the morning of December 17, 2017, and that Chavez made a purchase with his father's credit card. (R. 38-

4

40.) However, the receipt for that purchase indicated that the purchase occurred on December 16, 2017, at 7:24 p.m. (R. 43-44.) No explanation was provided for the discrepancy between the time stamp on the surveillance video and the time stamp on the receipt.

As part of his investigation, Inv. Chambless spoke with Jose Valadez, and the State asked Inv. Chambless to testify to the substance of Valadez's out-of-court statement. A.P.S. objected to the admission of Valadez's statement on the grounds that the statement was hearsay and that the admission of the statement would violate his right to confront the witnesses against him. The juvenile court overruled that objection, and Inv. Chambless testified as follows regarding Valadez's statement:

> "[Valadez] said he went to Villanueva's house and picked up Villanueva and [A.P.S.] on or about the 15th of December. They went to [Chavez's] house sometime around midnight-ish. When they got to [Chavez's] house, [Valadez] stayed in the car. [A.P.S.] and Villanueva exited the vehicle and went in the house. [Valadez] heard gunshots. Then they came and got him and brought him into the house at which point he saw [Chavez's] mom and dad dead in the house. Dad was on the couch and mom on the floor. They cleaned up as best they could. They put the two bodies in a white S-10 pickup, took them out and buried them."[2]

---

[2]In February 2022, Valadez pleaded guilty to abuse of a corpse and was sentenced to 10 years' imprisonment. (Supp. C. 6.)

5

(R. 85.) On cross-examination, Inv. Chambless testified that A.P.S.'s DNA was not on either of the handguns found in the Escalade and that there was no physical evidence that connected A.P.S. to the murders of Gonzalez and Ruiz. (R. 91, 95.)

Following Inv. Chambless's testimony, the juvenile court conducted the dispositional phase of the transfer hearing and, following that phase, took the matter under advisement. In an order issued on October 1, 2021, the juvenile court found that there was probable cause to believe A.P.S. had committed capital murder and transferred him to the circuit court for prosecution as an adult. A.P.S. filed a timely notice of appeal.

## Discussion

On appeal, A.P.S. claims that the juvenile court's transfer order must be reversed because, he says, the court erred by allowing Inv. Chambless to testify to the substance of Valadez's out-of-court statement. In support of that claim, A.P.S. argues that Valadez's statement was hearsay and that the admission of the statement violated his right to confront the witnesses against him. See U.S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him."); and § 12-15-202(f)(3), Ala.

6

Code 1975 (providing that, in a juvenile-transfer hearing, the accused "has the right to confront all witnesses against the child, subject to limitations recognized by the United States Supreme Court").

Before transferring an accused juvenile to the circuit court for prosecution as an adult, a juvenile court "'must determine that there is probable cause that the child committed the alleged offense.'" D.M. v. State, [Ms. CR-20-0261, Oct. 8, 2021] ___ So. 3d ___, ___ (Ala. Crim. App. 2021) (quoting J.F.B. v. State, 729 So. 2d 355, 356 (Ala. Crim. App. 1998)). See Duncan v. State, 394 So. 2d 930, 932 (Ala. 1981) ("The finding of probable cause is an essential element of the decision to transfer."). "In a juvenile transfer hearing, hearsay evidence is admissible to show that there is probable cause that the accused committed the crime, but it cannot constitute the sole basis for a finding of probable cause." Q.J.S. v. State, 12 So. 3d 164, 165 (Ala. Crim. App. 2008). However, pursuant to § 12-15-202(f)(3), the Alabama Legislature has provided an accused juvenile with a statutory right to confront the witnesses against him in a transfer hearing. Thus, "'hearsay evidence that violates the child's right of confrontation may not even be admitted, much less constitute the sole basis for a finding of probable cause to transfer the child to circuit court.'"

7

C.E.B. v. State, 661 So. 2d 786, 787 (Ala. Crim. App. 1994) (quoting O.M. v. State, 595 So. 2d 514, 518 (Ala. Crim. App. 1991)) (emphasis added). See also W.T.J. v. State, 665 So. 2d 1019, 1022 (Ala. Crim. App. 1995) ("'The Alabama Supreme Court has made it clear that evidence which could not be constitutionally admitted at a criminal trial should be excluded from a transfer hearing.'" (quoting O.M., 595 So .2d at 517 (citing Ex parte Whisenant, 466 So. 2d 1006, 1008 (Ala. 1985))).

The Confrontation Clause of the Sixth Amendment to the United States Constitution "'prohibits the admission of … testimonial hearsay [statements offered for the truth of the matter asserted],'" Turner v. State, 115 So. 3d 939, 943 (Ala. Crim. App. 2012) (quoting Crawford v. Washington, 541 U.S. 36, 53 (2004)), "unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant." Ex parte Phillips, 287 So. 3d 1179, 1207 (Ala. 2018) (citing Crawford, supra). Thus,

> "'when offered for the truth of the matter asserted, a nontestifying codefendant's statement to police implicating the accused in the crime is inadmissible against the accused; it does not fall within any recognized exception to the hearsay rule and ... its introduction violates the accused's confrontation rights. See Lee v. Illinois, 476 U.S. 530, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986); Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); R.L.B.

v. State, 647 So. 2d 803 (Ala. Crim. App. 1994); Ephraim v. State, 627 So. 2d 1102 (Ala. Crim. App. 1993).'"

C.L.H. v. State, 121 So. 3d 403, 406 (Ala. Crim. App. 2012) (quoting Jackson v. State, 791 So. 2d 979, 1024 (Ala. Crim. App. 2000)).

In this case, the State does not contend that Valadez was unavailable to testify at the transfer hearing; indeed, the State conceded during oral argument before this Court that Valadez "was apparently available for testimony." The State also conceded during oral argument that Valadez's out-of-court statement was testimonial hearsay, and it clearly was because it was offered for the truth of the matter asserted, i.e., that A.P.S. murdered Gonzalez and Ruiz or participated in their murders. Thus, Valadez's statement was inadmissible at the transfer hearing because its admission violated A.P.S.'s right to confront the witnesses against him. See C.E.B., 661 So. 2d at 787 (holding that an investigator's testimony regarding "statements made by others implicating the appellant" was not admissible in a transfer hearing).[3]

---

[3]We recognize that this Court has previously acknowledged that "transfer hearings are 'analogous to preliminary hearings'" in that, in both hearings, the court must determine whether there is probable cause to believe the accused committed the crime with which he is charged. J.L. v. State, 826 So. 2d 205, 207 (Ala. Crim. App. 2001) (quoting O.M., 595 So. 2d at 517). However, our decision in this case has no bearing on

However, the fact that A.P.S. was denied his right to confrontation does not necessarily require reversal of the transfer order because "'[a] denial of the right of confrontation may, in some circumstances, result in harmless error.'" Floyd v. State, 289 So. 3d 406 (Ala. Crim. App. 2017) (quoting James v. State, 723 So. 2d 776, 781 (Ala. Crim. App. 1998)). See also Smith v. State, 898 So. 2d 907, 917 (Ala. Crim. App. 2004) ("[V]iolations of the Confrontation Clause are subject to harmless-error analysis."). In the context of the probable-cause phase of a transfer hearing, our harmless-error analysis necessarily requires us to consider both the strength of the erroneously admitted evidence and the strength of the State's remaining evidence. In cases where there is a strong evidentiary basis for finding probable cause without the erroneously admitted evidence, the error is likely harmless. However, in cases where the erroneously admitted evidence is the most damning evidence against the juvenile and the State's remaining evidence is not particularly strong, the error is likely not harmless. This Court has previously conducted a

---

whether the right to confrontation is applicable in a preliminary hearing. As this Court noted in O.M., supra: "[W]e need not decide whether or to what extent the rights of confrontation and cross-examination exist at a preliminary hearing because those rights apply to a juvenile transfer hearing in Alabama by virtue of … statute." O.M., 595 So. 2d at 517.

harmless-error analysis in other transfer cases that involved a violation of the accused juvenile's right to confrontation, and those cases provide helpful examples of the balancing required in such analysis.[4]

In D.D.P. v. State, 595 So. 2d 528 (Ala. Crim. App. 1991), this Court held that the juvenile court had violated the four accused juveniles' right to confrontation by admitting a "fingerprint report" that matched the juveniles' fingerprints with fingerprints found on the victim's automobile. D.D.P., 595 So. 2d at 533. However, as to two of the juveniles – Rodney and Reginald – the erroneous admission of the fingerprint report was harmless. This was so, the Court explained, because the victim had "identified Rodney as one of her assailants and that identification, alone, was sufficient to establish probable cause" and because Reginald's self-incriminating statement likewise "established probable cause without the fingerprint evidence." Id. The Court also held that the admission of

---

[4]The State directs our attention to L.L.J. v. State, 746 So. 2d 1052 (Ala. Crim. App. 1999), in which this Court stated that, "in the context of a transfer hearing, the harmless error doctrine allows a finding of probable cause when, after the incompetent evidence is excluded, there is sufficient competent evidence to support a finding of probable cause." Id. at 1058. That statement, which was dicta and has never been cited in another case, does not precisely set forth the correct standard because it does not appear to take into account the comparative strengths of the erroneously admitted evidence and the State's remaining evidence.

Reginald's statement violated the other juveniles' right to confrontation, but the Court once again held that the error was harmless as to Rodney because the victim's identification of Rodney "was sufficient in and of itself to establish probable cause." Id. at 536.

In R.L.B. v. State, 647 So. 2d 803 (Ala. Crim. App. 1994), this Court held that the juvenile court had violated R.L.B.'s right to confrontation by admitting an out-of-court statement from one of his two accomplices, who had implicated him in a robbery. The Court held that the error was harmless, though, because the victim had "identified [R.L.B.] as one of the robbers and that identification, alone, was sufficient to establish probable cause." R.L.B., 647 So. 2d at 806.

Thus, in both D.D.P. and R.L.B., this Court held that the Confrontation Clause violations were harmless because the State's remaining evidence was sufficient in and of itself to establish probable cause. At first blush, then, those cases appear to support the State's argument that our harmless-error analysis should hinge solely on whether the State's remaining evidence was sufficient to establish probable cause. See note 4, supra. However, the State's remaining evidence in D.D.P. and R.L.B. – victim identification and a self-

incriminating statement – was at least as damning as the erroneously admitted evidence, if not more so, and provided its own strong basis for finding probable cause. And this Court's harmless-error analysis in other transfer cases demonstrates that we cannot simply consider the State's remaining evidence in a vacuum when the erroneously admitted evidence is clearly the most damning evidence against the accused juvenile and the remaining evidence is comparatively weak.

For example, in R.K.L. v. State, 650 So. 2d 586 (Ala. Crim. App. 1994), this Court considered whether the erroneously admitted statement at issue in R.L.B. was harmless as to R.K.L., who was R.L.B.'s other accomplice and was also implicated in the third accomplice's statement. In holding that the error was not harmless as to R.K.L., the Court noted that the victim had not been able to identify him as one of the assailants and that, as a result, the State's only evidence against him was evidence that "plac[ed] [him] in the company of R.L.B. shortly before the commission of the robbery." R.K.L., 650 So. 2d at 587. The Court held that "that evidence [was] circumstantial and [was] not sufficient in and of itself to convince this Court that the juvenile court would have found probable cause to transfer [R.K.L.] without a consideration of the

[accomplice's] statement." R.K.L., 650 So. 2d at 587. In other words, the Court did not look simply at whether that circumstantial evidence was sufficient in and of itself to establish probable cause and, indeed, did not say whether it was or was not sufficient in that regard. Instead, the Court appears to have considered the relative weakness of that evidence when compared to the strength of the accomplice's statement, and the fact that the statement was clearly the most damning evidence against R.K.L. precluded a finding of harmless error.

This Court conducted a similar harmless-error analysis in M.M. v. State, 629 So. 2d 734 (Ala. Crim. App. 1993). In that case, the Court held that the juvenile court had violated M.M.'s right to confrontation by admitting an out-of-court statement by his half-brother in which the half-brother claimed that M.M. "had given him a detailed account of how he had killed the [victims]." M.M., 629 So. 2d at 735. The only other evidence that tended to connect M.M. to the murders was a "composite [picture] of the suspect" that "had been drawn based on descriptions given by eyewitnesses." Id. That composite picture, which "fit[ ] [M.M.'s] description[,] showed the perpetrator with long hair," and evidence indicated that M.M.'s "hair had been cut and dyed by [his] girlfriend two

days after the killings." Id. The Court held that the erroneous admission of the half-brother's statement was not harmless because the statement was, "beyond a doubt, the most compelling evidence presented against [M.M.]" and was "extremely damaging to" him. Id. at 737. As in R.K.L., the Court made no determination as to whether the State's remaining evidence was sufficient in and of itself to establish probable cause. Instead, the Court's harmless-error analysis focused on the strength of the half-brother's statement and the comparative weakness of the State's remaining evidence. And the facts that the half-brother's statement was clearly the most damning evidence against M.M. and that the State's remaining evidence was not particularly strong precluded a finding of harmless error, regardless of whether the relatively weak remaining evidence might have been sufficient to establish probable cause.

Similarly, in O.M., supra, this Court held that the juvenile court had violated O.M.'s right to confrontation by admitting two out-of-court statements implicating him in the crimes of murder and arson. The Court also held that the erroneous admission of those statements was not harmless because the statements were the "primary evidence linking [O.M.] to the crimes," O.M., 595 So. 2d at 516, and were thus "extremely

15

damaging" to O.M. Id. at 520. Here again, the Court made no determination as to whether the State's remaining evidence was sufficient in and of itself to establish probable cause; in fact, the Court did not even discuss the remaining evidence, noting only that some witnesses had testified at the transfer hearing. Thus, as was the case in R.K.L. and M.M., the fact that the erroneously admitted statements were clearly the most damning evidence against O.M. precluded a finding of harmless error.

This case is similar to R.K.L., M.M. and O.M. and is distinguishable from D.D.P. and R.L.B. No evidence was found in either Gonzalez and Ruiz's residence, the S-10 truck, or the Escalade that tended to connect A.P.S. to the murders, nor were there any eyewitnesses to the murders. The only evidence that even arguably connected A.P.S. to the murders, other than Valadez's statement, was the fact that he was at a service station with Chavez, the S-10 truck, and the Escalade at some unspecified time in the 12-hour period after the murders occurred. Regardless of whether that evidence might have been sufficient to establish probable cause, Valadez's statement was, "beyond a doubt, the most compelling evidence presented against [A.P.S.] at the transfer

16

hearing," and there can be no serious dispute that Valadez's statement was "extremely damaging" to A.P.S. M.M., 629 So. 2d at 737. Thus, we are not convinced "that the juvenile court would have found probable cause to transfer [A.P.S.] without a consideration of [Valadez's] statement." R.K.L., 650 So. 2d at 587 (emphasis omitted). That was not the case in D.D.P. and R.L.B., where, even without the erroneously admitted evidence, there remained a strong evidentiary basis for finding probable cause. Accordingly, given that Valadez's statement was clearly the most damning evidence against A.P.S. and that the State's remaining evidence was comparatively rather weak, this Court cannot conclude that the erroneous admission of Valadez's statement was harmless.

A.P.S. also raises two other claims on appeal: (1) that the transfer order is deficient because it does not reflect that the juvenile court considered the six factors set forth in § 12-15-203(d), Ala. Code 1975, and (2) that the juvenile court's decision to transfer him to the circuit court for prosecution as an adult was not supported by clear and convincing evidence. See D.M., ___ So. 3d at ___ ("'[D]uring the dispositional phase, the court must determine by "clear and convincing" evidence whether a transfer is in the best interest of the child or the public.'" (quoting J.F.B.

17

v. State, 729 So. 2d 355, 356 (Ala. Crim. App. 1998))). We need not address these claims because we have determined that the transfer order must be reversed based on the violation of A.P.S.'s right to confrontation. However, we take this opportunity to reiterate that, when a juvenile court transfers an accused juvenile to the circuit court for prosecution as an adult, the transfer order must reflect that the juvenile court considered each of the six factors in § 12-15-203(d). See Ex parte S.B., 650 So. 2d 953, 955 (Ala. 1994) (Section 12-15-203(d) "'compels consideration of each of the six factors and that the transfer order reflect consideration thereof.'" (quoting Reeves v. State, 419 So. 2d 217, 218 (Ala. 1982))).

## Conclusion

The admission of Valadez's out-of-court statement violated A.P.S.'s right to confrontation, and that error was not harmless. Thus, we reverse the transfer order and remand the case to the juvenile court for further proceedings. If the State still desires to prosecute A.P.S. as an adult, the juvenile court should hold another transfer hearing at which Valadez's out-of-court statement must not be admitted. See W.T.K. v. State, 598 So. 2d 33, 35 (Ala. Crim. App. 1992) ("'Jeopardy does not attach in a

transfer hearing where there was no adjudicatory finding that the juvenile was delinquent or had actually violated a criminal law.'" (quoting <u>Cruse v. State</u>, 489 So. 2d 694, 696 (Ala. Crim. App. 1986))).

APPLICATION OVERRULED; OPINION OF AUGUST 5, 2022, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.

Windom, P.J., and Kellum, Cole, and Minor, JJ., concur.